## MANHATTAN TRUST CO. v. DAYTON NATURAL GAS CO.

(Circuit Court, S. D. Ohio, W. D.    April 8, 1893.)

### No. 4,594.

1. GAS COMPANIES—MUNICIPAL REGULATION OF CHARGES.

Rev. St. Ohio, § 2478, provides that municipal councils shall have power to regulate, "from time to time," the prices to be charged for natural or artificial gas furnished to citizens or public buildings within the town or city; and section 2479 provides that where the council fixes a minimum price for a period not exceeding ten years, and the gas company accepts it in writing, the council shall have no power to fix a less price during the period of time agreed on. An ordinance passed pursuant to these sections fixed a schedule of monthly charges for fuel gas, and in its second section declared that these should be the minimum charges required by the council for five years, and the ordinance was accepted by the company. Thereafter it was provided that consumers might elect to have the gas furnished by meter instead of at the schedule rates, and the same ordinance declared that "the contract heretofore made as to the schedule of prices shall be in full force, except as herein altered, and for the unexpired time of the original contract." Held that, while the contract, which relates solely to the minimum price to be fixed by the council, expires in five years, the provisions of the original ordinance fixing a maximum price remain in force until repealed or otherwise superseded.

2. SAME—EQUITABLE RELIEF.

Where the company duly accepted the maximum rate fixed by the ordinance, the fact that it is, or has become, inadequate compensation for the gas furnished is no ground for equitable relief, the company being in the hands of a receiver, but appeal must be made to the council.

In Equity. Bill by the Manhattan Trust Company against the Dayton Natural Gas Company. Heard on exceptions to the answers of the plaintiff and others to an intervening petition filed by the city of Dayton, Ohio. Exceptions sustained.

Walter B. Richie, for complainant.

Lawrence Maxwell, Jr., and John A. McMahon, for receiver.

Wm. Craighead and Frank Conover, for city of Dayton.

SAGE, District Judge. The defendant company was organized as a corporation under the laws of the state of Ohio on the 24th day of November, 1886, under the name of the Southwestern Natural Gas & Petroleum Oil Company. On the 18th of March, 1887, the council of the city of Dayton, Ohio, adopted an ordinance in pursuance of the provisions of title 12, div. 8, c. 3, Rev. St. Ohio, authorizing the defendant to occupy streets, alleys, and public grounds of the city to lay pipes for the purpose of lighting the same, and furnish gas to the citizens and public buildings. By the terms of this ordinance the company had 18 months within which to introduce gas into the city. The eighth section enacted that if the company should fail to furnish a supply of natural gas for lighting and heating purposes by the 1st of January, 1889, the franchises and privileges granted by the ordinance might, by resolution of the city council, be declared forfeited, and thereupon all rights granted by the ordinance should cease and determine. The company, having accepted the ordinance and executed the bond required by it, proceeded to the work of laying pipes, but the 1st of January came and passed, and the company wholly failed to perform its contract. On the 2d of February, 1889, the city council, by resolution, in pursuance of section 8 of the ordinance, declared all the rights granted thereby forfeited. Meantime, on the 23d of December, 1887, the council had passed an ordinance to fix and regulate the prices to be charged by the defendant company for natural gas to be furnished by it for fuel purposes for and during the period of five years next ensuing from and after the date at which the ordinance should take effect, which was to be at the expiration of ten days after the date of its first publication. The rate fixed by that ordinance related exclusively to gas to be furnished for fuel purposes by mixers. It contains a schedule of monthly charges and discounts for cooking, for laundry purposes, for heating, and for furnaces, graduated by the capacity of the mixers as indicated by numbers, and for furnaces by letters. Section 2 of the ordinance is as follows:

"Sec. 2. The foregoing is fixed as the minimum price at which said city council requires said company to furnish gas to the citizens of said city and to the public buildings of said city for said term of five years, and said company is hereby required to assent thereto by written acceptance filed in the office of the city clerk of said city."

This ordinance was duly accepted by the company.

On the 28th of March, 1889, the name of the company having been changed to the Dayton Natural Gas Company, the council of the city of Dayton passed an ordinance granting to the company the right and privilege to lay, maintain, and operate gas pipes in the city for the purpose of supplying natural gas, or produce gas for heating, fuel, and power purposes only. By section 1 the grant to the company, its successors and assigns, subject to the terms,

conditions, and limitations of the ordinance, was of "the right and privilege, for the term of twenty years, to lay, maintain, and operate mains, pipes, branches, and conduits through the streets, lands, alleys, avenues, and public grounds of said city, for the purpose of supplying said city and its inhabitants with natural gas or produce gas for heating, fuel, and power purposes only." Section 10 of the ordinance is as follows:

"Sec. 10. Any consumer within said city shall have the right to require gas to be furnished by meter measurement, and not by the schedule rates. In cases where a meter is used, said company shall have the right to charge and receive any sum, not exceeding ten cents per thousand cubic feet, if paid within ten days, or twelve and one-half cents per thousand cubic feet if not so paid, for the gas used. Such meter shall be furnished and set in place upon the written application of any consumer, without cost to such consumer, by said company; but said company shall be entitled to charge a rent of three dollars per year in advance therefor."

In section 13 it is provided that the company shall be compelled to furnish gas to all applicants whenever applied for, and in section 14 that "said company shall supply natural gas to consumers and to said city so long as said gas shall last." Section 15 prescribes the diameter of the openings of the mixers according to numbers and letters; also the thickness of the metal through which the outlet for gas is made in the mixers. It also provides that "the contract heretofore made between the city and this company, as to schedule of prices, shall be in full force, except as herein altered, and for the unexpired time of said original contract, and all property rights heretofore acquired by this company shall be preserved to it, except as modified herein."

Section 20—the final section—provides "that this ordinance shall take effect at the date when said company shall file its written acceptance of the provisions hereof with the city clerk of said city." This ordinance, also, was duly accepted in writing by the defendant company.

The contract under the ordinance of December 23, 1887, expired on the 10th of January, 1893. Upon the institution of this suit on the 18th of February, 1893, the property of the defendant company was placed in the control of a receiver appointed by this court, who has qualified and taken possession. The receiver, claiming that there was after the 10th of January, 1893, no rate fixed by the council of Dayton which was operative and in force, proceeded to carry into effect a resolution of the defendant company passed in December, 1892, in anticipation of the termination of the contract created by the ordinance of December 23, 1887, and its acceptance by the defendant, and the modification thereof by the ordinance of March 28, 1889, and its acceptance, advanced the rate for gas to 20 cents per thousand cubic feet, and sent out his bills accordingly. Upon the application of the city of Dayton the court made a temporary order requiring the receiver to accept 10 cents per thousand cubic feet, and credit the same upon the bills sent out, subject to and until further order. The city of Dayton was made a party defendant, and has filed its intervening petition, to which the receiver and the complainant have made answer. Exceptions to

these answers for insufficiency have been filed. They present the question, what is the present force and effect of section 10 of the ordinance of March 28, 1889? The sections of the Ohio Revised Statutes bearing upon this question are as follows:

"Sec. 2478. The council of any city or village in which electric-lighting companies, natural or artificial gas companies, or gaslight or coke companies may be established, or into which their wires, mains, or pipes may be conducted, are hereby empowered to regulate, from time to time, the price which said electric-lighting, natural or artificial gas, or gas and coke companies may charge for electric light, or for gas for lighting or fuel purposes, furnished by such companies to the citizens, public grounds and buildings, streets, lanes, alleys, avenues, wharves, and landing places; and such electric-lighting, natural or artificial gas, or gaslight and coke companies shall in no event charge more for any electric light or natural or artificial gas furnished to such corporation or individuals than the price specified by ordinance of such council; and such council shall also have power to regulate and fix the price which such companies shall charge for rent of their meters.

"Sec. 2479. In case the council fixes the minimum price at which it requires any company to furnish gas to the citizens, or public buildings, or for the purpose of lighting the streets, alleys, avenues, wharves, landing places, and public grounds, for a period of not exceeding ten years, and the company assents thereto by written acceptance filed in the office of the clerk of the corporation, it shall not be lawful for the council to require such company to furnish gas at a less price during the period of time agreed on, not exceeding ten years, as aforesaid."

It is first to be observed that the ordinance of December 23, 1887, fixes a schedule of prices, "and no more;" in other words, an absolute schedule, which is referred to in section 2 as the minimum price, but section 1 makes it also the maximum price. Turning to section 15 of the ordinance of March 28, 1889, we find a recognition of a subsisting contract, under the ordinance of December 23, 1887, between the city and the company, which it is expressed shall be in full force "as to schedule of prices," "except as herein altered, and for the unexpired time of said original contract." What are the alterations referred to? Certainly, one of them is to be found in section 10, for by that section any consumer is given the right "to require gas to be furnished by meter measurement, and not by the schedule rates." Here is a plain reference to the ordinance of December 23, 1887, for there only is any mention of schedule rates, excepting in section 15 of the ordinance of March 28, 1889, where it occurs in the sentence relating to the modification of the contract stated in the ordinance of December 23, 1887. Then follows, in section 10, the provision giving to the company, where a meter is used, "the right to charge and receive any sum, not exceeding ten cents per thousand cubic feet, if paid within ten days, or twelve and one-half cents per thousand cubic feet if not paid, for the gas used."

In State v. Gas Co., 37 Ohio St. 45, the supreme court said that a provision in an ordinance for continuing the price of gas, as therein fixed, for the period of five years, "operated, under section 2479, as a proposition to the company, which, if accepted as therein provided, would preclude the council from lowering the price for the period named; but if not thus accepted, the power of the council to regulate the price from time to time was as ample as it would

have been had the ordinance contained no such provision as to time." The ordinance in that case was by its terms to take effect and be in force from and after passage and legal publication, but another ordinance of the same date provided that, if any gas company should agree to furnish gas at the price fixed by council for five years, it should be granted certain specified privileges. It was by construing these ordinances together that the court reached the conclusion above stated. In this case the ordinance itself, after fixing the price in the same manner as in the Ironton Case, contains in its final section a provision making it effectual only upon the company filing its written acceptance of the provisions thereof with the city clerk. There is no substantial difference between the two cases, and the case cited seems to be decisive. Section 2479 was enacted manifestly for the protection of gas companies, by affording a certainty that the price to be paid for gas would not be reduced below the minimum within the period, not exceeding 10 years, accepted by the company. Section 2478 was manifestly for the protection of the corporation and of individual consumers, by limiting the maximum which might be charged to the price specified in the ordinance, and it may well be doubted whether a municipal corporation has a right to make any contract upon the basis of section 2478, inasmuch as the power vested in the municipality is to regulate the price "from time to time," and therefore one council could not limit or abridge the power of any subsequent council under that section. That was the ruling in Coke Co. v. Avondale, 43 Ohio St. 268, 1 N. E. Rep. 527, where the court said, referring to section 2478, that in agreeing to place beyond the control of the village the price and quality of gas, the council exceeded its powers, and the agreement was ultra vires and void. The contract in this case, as modified by the ordinance of March 28, 1889, expired by its own limitation on the 10th of January, 1893; but it by no means results that the provisions of the ordinance of December 23, 1887, fixing the price for gas furnished by mixer, or of section 10 of the ordinance of March 28, 1889, fixing the price where a meter is used, are no longer in force. The contract provision of the ordinance of 1887 is in a separate section. It amounts to nothing more than a stipulation that for five years from the date of the first publication of the ordinance the prices fixed by section 1 should be the minimum prices. That was its only operation upon the provisions relating to prices. The first section fixing the price has, by reason of the contract provision in section 2, a double bearing: First, under section 2478, fixing the maximum prices; and, second, under section 2479, by reason of section 2 of the ordinance, and of its acceptance by the company, fixing the minimum prices for the term of five years. Neither section 1 of that ordinance, nor section 10 of the ordinance of March 28, 1889, was repealed by the expiration of the contract. Both sections remain in force, and will continue in force until repealed or superseded. There was no necessity for stating any limit for their duration. The power given by the legislature to regulate prices "from time to time" was sufficient to make the provisions effective

until repealed or superseded. The exceptions will be sustained, and the restraining order continued until the final hearing of the cause.

## On Petition for Rehearing.

### (April 18, 1893.)

SAGE, District Judge. An application has been made, in the nature of a petition for rehearing, which brings up for consideration the proposition that the provisions of section 10 should be no longer enforced for the reason that gas cannot be furnished without loss to the company at the rate thereby fixed. The company filed its written acceptance of the ordinance of March 28, 1889, and thereby assented that the rate fixed by section 10 was reasonable. It is averred in the answers of the receiver and of the complainant that 10 cents per thousand cubic feet for the use of natural gas furnished by meter is an utterly inadequate price. That averment must, for the purposes of this consideration, be taken as true. The inadequacy may bear heavily upon the complainant, but it cannot affect the construction or the validity or force of the section. The complainant accepted the ordinance, and its only remedy now is to appeal to the council.

My attention has been called to the fact, inadvertently misstated in the last paragraph of the opinion on file, that the first section of the ordinance of December 23, 1887, expired by its own limitation five years from and after the date at which the ordinance took effect; that is to say, at the same time as the contract. That circumstance, however, does not affect the ruling of the court. The expiration of section 1 of the ordinance of December 23, 1887, was by its own limitation, and not by reason of the contract. Section 10 of the ordinance of March 28, 1889, does not in the least depend upon section 1 of the ordinance of December 23, 1887. In so far as it fixes a maximum, it is simply a legislative provision. It is in full force, and will remain in force until amended or repealed. That maximum was by section 15 adopted as the minimum under the contract, but that adoption did not in any way affect the operation or duration of the price fixed by section 10 as the maximum. When the contract expired, that price ceased to be operative as a minimum, but it remained in full force as a maximum.

The application for rehearing will be denied.